# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00732-CR

**Frederick Riley Abbott, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 60071, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On November 14, 2006, a Bell County jury convicted appellant Frederick Riley Abbott of aggravated sexual assault of a child, a first-degree felony. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B), (a)(2)(B), (b)(1), (e), 22.011(c)(1) (West Supp. 2006). At punishment, after Abbott pleaded true to two enhancement paragraphs in the indictment, the jury sentenced him to life imprisonment and fined him $10,000, the maximum punishment. *See id.* § 12.32 (West 2003). In his sole point of error, Abbott argues that the evidence presented at his trial is factually insufficient to support his conviction. We will affirm the judgment of the trial court.

## BACKGROUND

At the time of the incident, the complainant S.L. was seven years old and was living with her mother Janelle[1] and her three sisters. Janelle had just separated from S.L.'s father, William, and had started a sexual relationship with Abbott, William's half-brother. William was in the

---

[1] We refer to S.L.'s immediate family members by their first names for convenience.

process of moving to live with his mother, Charlotte,[2] at her home in Brookfield Mobile Home Park in Killeen. Abbott's home was a trailer in the same trailer park. On June 23, 2006, Janelle visited Abbott at his home, bringing S.L. and her three other daughters with her. They all spent the night there, with Abbott and Janelle sleeping in Abbott's room and the daughters sleeping in the room normally occupied by Abbott's roommate Mark Bruyette. William was also present in Abbott's trailer that evening, which was a common occurrence. William and Bruyette slept in Abbott's living room.

The next morning, Abbott and Janelle got into an argument about who would feed the children. At the time Abbott was shirtless and wearing black shorts and was drinking a forty-ounce bottle of malt liquor. After the argument Janelle went to lie down, complaining of a headache, so William fed the children himself and then went to check on Janelle. When William returned to the living room, he noticed that both S.L. and Abbott were missing, prompting him to leave the other children in Bruyette's care and go looking for S.L. and Abbott. William acted on Bruyette's advice to check Charlotte's trailer, but was initially prevented from entering because the normally unlocked trailer door was locked. William unlocked and entered the trailer and began to search for his daughter and half-brother. When he entered one of the trailer's bedrooms, he encountered Abbott naked on top of a person of significantly smaller stature. Abbott completely obscured the person with the exception of the person's arms, which appeared to be the arms of a child. William testified that while he could only see the person's arms, he assumed that Abbott was having sex with his daughter S.L. William is an epileptic and was afraid that confronting Abbott would trigger a seizure. Because Abbott had not noticed him, William elected to get Janelle to help instead of confronting

---

[2] Charlotte is also Abbott's mother.

Abbott. Upon arriving at Abbott's trailer, William stayed with the remaining children while Janelle and Bruyette ran to Charlotte's trailer.

Janelle testified that when she entered Charlotte's trailer, she found Abbott standing in the hall outside the bathroom. S.L. was inside the bathroom seated on the toilet. No other persons were in the trailer. S.L. told Janelle that her bottom hurt. Janelle noticed what appeared to be dish soap discharge "with other stuff mixed in" on S.L.'s bottom. Janelle told S.L. not to wipe and took her outside of the trailer. A friend called the police, who were quickly dispatched.

Upon arriving at the scene, one of the officers noticed a man without a shirt, wearing black shorts, and carrying a forty-ounce bottle of malt liquor walking away from the location and disappearing behind other trailers. A crowd had meanwhile gathered around Charlotte's trailer. Janelle brought S.L. to the officer. S.L. told the officer that her bottom hurt. The officer called for an ambulance, which took S.L. to a nearby hospital, with Janelle accompanying her. The officer then interviewed William and took a statement. The officer learned that the suspect was the person he had seen walking away from the location bare-chested in black shorts and advised other officers of Abbott's location. At trial, the officer identified the suspect as Abbott.

Upon S.L.'s arrival at the hospital, Lori Talbott, a sexual assault nurse examiner, examined S.L. Talbott testified at trial to the results of that examination. Talbott found a 2.5-millimeter anal tear, which she testified would be extremely painful to S.L. and was consistent with anal penetration. Talbott also found the tissue surrounding S.L.'s hymen to be red and tender. When Talbott questioned S.L., S.L. stated that "Uncle Fred" put his "thingy" on her "booty" and her "peepee," that he had been hitting her, and that he had done this since January "at his house and Grandma's." During the exam, Talbott showed S.L. a diagram of a female child's body to determine

3

what words S.L. used to identify various body parts; S.L. called the anal area "booty" and the vaginal area "peepee." When asked what the penis is called, S.L. responded "thingy." The examination was consistent, in Talbott's opinion, with the history of events that S.L. related to her.

At trial, Talbott testified that passing hard stool could possibly cause a tear similar to the 2.5-millimeter one found during her examination of S.L. However, Talbott further testified that S.L. told her that she had not defecated that day and that Talbott had indicated that fact on the examination report admitted into evidence.

S.L. testified at trial and said that Abbott hurt her, that he took her clothes off, and that he put his "thingy" in her "booty" while on top of her. She identified Abbott during the trial. S.L. also corroborated Talbott's testimony about the words she used when referring to private parts. She testified that she was scared, and when questioned by counsel about what frightened her, she pointed directly at Abbott. Both Janelle and William testified to S.L.'s change in behavior after the incident, noting that it had turned particularly negative toward Abbott and that her personality had generally gone from spunky to downtrodden.

Charlotte, the mother of both William and Abbott, testified at trial that she had spoken to Abbott about the incident with S.L. while he was in jail. According to Charlotte, she asked Abbott if he had sexually assaulted S.L. and he responded, "Mommy, I don't remember."

Abbott attempted to advance a defense based on the fact that he and Janelle were in a sexual relationship, suggesting that William, being the estranged husband, would have a motive to fabricate his testimony to get revenge on Abbott. Abbott questioned William extensively about his knowledge of the sexual relationship between Abbott and Janelle, including how and when he found out about it. Abbott also attempted to emphasize on cross-examination that William often had

4

to sleep in the same trailer as Abbott and Janelle while they shared a bed. Abbott, however, was unable to elicit any further evidence from the witnesses to support his theory beyond the fact that William was aware of the sexual relationship between his wife and Abbott. On direct examination by the State, William indicated that given the circumstances of his separation from Janelle, he did not care that she was seeing his half-brother.

## DISCUSSION

Abbott argues on appeal that the evidence that was presented at the trial is factually insufficient to support the jury's guilty verdict. Abbott contends that S.L.'s testimony was so inconsistent that it was insufficient to allow a reasonable jury to find him guilty beyond a reasonable doubt. He also urges that because the other witness to the alleged act, William, was not in a position to positively identify the victim and gave a version of events too incredible to believe, his testimony was insufficient to allow a reasonable jury to find him guilty beyond a reasonable doubt.

A factual-sufficiency review requires this Court to view all the evidence in a neutral light, favorable to neither the verdict itself nor any of the parties, and to determine whether the verdict is clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000) (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). To make this determination, we must perform a two-part test. We first look at the evidence presented in support of the guilty verdict and reverse only if the evidence "is so weak as to be clearly wrong and manifestly unjust." *Id.* at 11. "This is the most equitable approach, especially given the fact criminal defendants are not under any obligation to present evidence on their behalf and usually rely, instead, on forcing the State to prove its case beyond a reasonable doubt." *Id.*

5

If the evidence that tends to prove the verdict is sufficient standing alone, we then compare it with the evidence against the verdict, *id*. at 7, and reverse only if after the comparison the verdict "is against the great weight and preponderance of the available evidence," *id.* at 11. This portion of the test is applicable "in the event a defendant does muster contrary evidence," giving the defendant a second ground for factual insufficiency. *Id.*

Appellate courts must always be mindful of the deference that we must give to the jury's original determinations. The mere fact that an appellate court would have acquitted based on the evidence does not mean that it can set aside the conviction. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). An appellate court also cannot order a new trial simply because it would have resolved an apparent conflict in the evidence differently than the jury. *Id.* Instead, the "great weight and preponderance" of the record evidence must objectively contradict the jury's verdict before an appellate court can grant a remand of the cause. *Id.* Additionally, an appellate court must respect the jury's determinations of what weight to give conflicting testimonial evidence "because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered," unlike the appellate court, who reviews a cold record. *Johnson*, 23 S.W.3d at 8.

**Evidence Supporting the Verdict**

On appeal Abbott makes several attacks on the sufficiency of the State's evidence. Abbott first attacks the credibility of S.L.'s testimony because it is inconsistent with a prior statement admitted into evidence. Specifically, S.L. testified at trial that Abbott put his "thingy *in* her booty," but Talbott testified that during her examination S.L. stated that Abbott put his "thingy *on* her

6

booty." (Emphases added.) The jury is the sole determiner of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7 (citing *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996)). We must defer to the jury's determinations of credibility unless the record clearly indicates that a different result is appropriate, *id.* at 8, and this minor difference in S.L.'s statements does not rise to such a level.

Abbott further attempts to discredit S.L. by claiming that S.L.'s parents erroneously thought that he sexually assaulted S.L. and that S.L., being an impressionable child, was affected by their anger and simply started repeating what she thought she was supposed to say. This is, at best, another credibility argument. The jury seems to have considered S.L. to be a credible witness, and nothing in the record clearly and objectively indicates that she was merely repeating her parents' impressions.

Finally, Abbott attempts to discredit William's testimony. Specifically, Abbott argues that William's testimony that he saw what he thought was his daughter being molested but did not intervene is not believable. William did, however, offer an explanation at trial of why he did not intervene, an explanation that seems to have been accepted by the jury. In an attempt to support his assertion of incredibility, Abbott advances the theory that due to Abbott's sexual relationship with William's wife, William had a motive to fabricate his testimony. This theory is not supported by the record. While the record does show that Abbott was in a sexual relationship with Janelle, it also shows that William regularly slept in the same dwelling as Abbott and Janelle without any evidence of animosity toward either of them. In fact, the only domestic strife introduced in the record was between Abbott and Janelle. Abbott failed at trial to elicit any testimony from William or any of the

7

other witnesses that William had a vendetta against Abbott. Thus, there is no record evidence suggesting that William had any motive to fabricate his story.

A minor complainant's testimony is, by itself, factually sufficient to support a conviction of aggravated sexual assault.[3] Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West 2005); *Perez v. State*, 113 S.W.3d 819, 837–38 (Tex. App.—Austin 2003, pet. ref'd). In this case, not only did the minor complainant testify but other witnesses also corroborated S.L.'s testimony. William testified that he witnessed Abbott naked on top of what appeared to be a child. Janelle testified that when she reached the trailer moments later, only two people were present—her daughter S.L. and Abbott—and that S.L. said that her bottom hurt. Talbott testified that her examination of S.L. revealed a 2.5-millimeter anal tear and red, tender flesh surrounding S.L.'s hymen, trauma consistent with the sexual assault that S.L. reported to her. Janelle and William further testified to the personality change of their daughter after these events. Even if we were to agree with the credibility attacks that Abbott made toward his half-brother's testimony, the testimony of Janelle and Talbott still corroborates S.L.'s testimony.

The jury appears to have determined that S.L.'s testimony was credible. Combining that testimony with the corroborating physical and testimonial evidence, we cannot say that the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust.

---

[3] S.L. reported the sexual assault to someone else the same day that it occurred, well within the year required for adult sexual assault victims. Because she was a child, though, she was not bound by this requirement. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (West 2005).

**Evidence Against the Verdict**

Because the evidence supporting the verdict is sufficient standing alone, we must now compare it with the evidence against the verdict. Evidence that goes against the verdict includes Nurse Talbott's testimony that S.L. stated that Abbott put his "thingy on her booty"[4] and Talbott's admission that the 2.5-millimeter anal tear could have possibly been caused by passing hard stool. Abbott would have us prefer this evidence over S.L.'s testimony that she was penetrated and Talbott's testimony that S.L. did not defecate that day, but we are unable to do so as only the jury can resolve apparent conflicts in the evidence. *See Watson*, 204 S.W.3d at 417. Abbott emphasizes that Talbott's medical examination did not support S.L.'s statements during the examination that the abuse had happened over a period of months or that Abbott had hit her. However, Talbott also testified that her examination did not necessarily rule out a continuing course of abuse or the possibility that Abbott had struck S.L. on the day of the examination.

Abbott further attacks S.L.'s credibility on the basis of William's testimony that when he initially asked S.L. about the incident, she told him that Abbott had not done anything to her and that she only stated that Abbott had hurt her after William asked a second time a few moments later. However, S.L.'s credibility is bolstered by the consistent statements that she made to both her mother and Nurse Talbott. The jury apparently found S.L. to be a credible witness, and we must defer to the

---

⁴ While simple contact is sufficient to support a finding of aggravated sexual assault of a child, *see* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iv) (West Supp. 2006), the indictment against Abbott charged penetration and did not include a charge of simple contact. Thus in this case, a statement alleging contact but not alleging penetration would go against the verdict.

jury's determination because the record does not clearly indicate that a different result is appropriate. *See Johnson*, 23 S.W.3d at 8.

Upon review, the evidence against the verdict carries very little weight in light of the entire body of evidence introduced at trial. After comparing the evidence against the verdict with the significant quantity of record evidence in favor of the verdict, we conclude that the greater weight and preponderance of the evidence clearly supports the verdict. In light of this conclusion, the verdict must be upheld. *See Watson*, 204 S.W.3d at 417.

Because the evidence in favor of the verdict is sufficient to convict by itself and greatly outweighs the evidence against the verdict, we overrule Abbott's point of error.

## CONCLUSION

With Abbott's only point of error overruled, we affirm the judgment of conviction.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: August 28, 2007

Do Not Publish